Robert Powers, Esquire
MCCLANNAHAN POWERS, PLLC
3160 Fairview Park Drive, Suite 410
Falls Church, VA 22042
Telephone: (703) 520-1326
Email: rpowers@mcplegal.com
         mtubens@mcplegal.com
*Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
MANHATTAN DIVISION**

-----------------------------------------------------------------------X

DAVID MCDONELL,

                              Plaintiff,

    -against-

EXCLONE, INC. dba exClone,

and

1A1 INC. dba 1A1 Project,

and

RIZA BERKAN,

                             Defendants.

-----------------------------------------------------------------------X

Index No. 1:25-cv-3618

**COMPLAINT**

**JURY TRIAL
DEMANDED**

      Plaintiff, DAVID MCDONELL ("Plaintiff"), by and through his undersigned counsel, alleges as follows, upon actual knowledge with respect to himself and his own acts, and upon information and belief as to all other matters, and moves this Honorable Court for judgment against the Defendants, EXCLONE, INC., dba exClone ("EC"), 1A1 INC. dba 1A1 Project ("1A1"), and DR. RIZA BERKAN ("Dr. Berkan"; each, a "Defendant", and collectively, "Defendants"), on the grounds and praying for the relief hereinafter set forth:

## NATURE OF ACTION

This action arises from Defendants' calculated scheme to exploit Plaintiff David McDonell, an experienced business development professional, through years of uncompensated labor under false promises of future equity, commissions, and financial reward. From 2019 to 2023, Plaintiff provided substantial, continuous services essential to the operations of EC from which its CEO, Dr. Berkan, and successor 1A1, benefited, all while Defendants deliberately misclassified Plaintiff as an "independent contractor" to evade obligations under New York and federal law. Despite working twenty or more hours per week, Plaintiff received virtually no compensation apart from a single token payment of $500.00. Defendants knowingly failed to comply with the mandates of the New York City law. Instead, Defendants induced Plaintiff to continue working through fraudulent representations of ownership opportunities they never intended to honor.

Following Plaintiff's abrupt termination, Defendants further attempted to shield themselves from liability by transferring operations to a successor entity while simultaneously disabling Plaintiff's access to company communications and records. Plaintiff now seeks redress for Defendants' (i) violations of the New York City Freelance Isn't Free Act, N.Y.C. Admin. Code § 20-927 et seq. ("FIFA"); (ii) breach of contract, or in the alternative, unjust enrichment; (iii) fraud in the inducement; and (iv) in the alternative, misclassification under New York law, and related harms. Through this action, Plaintiff seeks to recover unpaid compensation, statutory damages, punitive damages, attorneys' fees, and all other relief this Court deems just and proper.

## THE PARTIES

1. Incorporated on or about April 10, 2014, or February 16, 2018, EC is a Delaware corporation, located and doing business at 220 Front St., New York, NY 10038, and unregistered

with New York's Department of State Division of Corporations to do business as a foreign entity in the State of New York. EC is no longer operational.

2. Incorporated on or about December 6, 2023, 1A1 is a Delaware corporation, located and doing business at 220 Front St., New York, NY 10038, and unregistered with New York's Department of State Division of Corporations to do business as a foreign entity in the State of New York. 1A1 is the successor to EC.

3. Dr. Berkan is currently, and at all relevant times to this action has been, a resident of and domiciled in the State of New York. Dr. Berkan was the former CEO of EC, and one of three founders of 1A1, the successor to EC. In his individual capacity, Dr. Berkan personally participated in, directed, and authorized the wrongful acts alleged herein, including the fraudulent inducement of Plaintiff, the misclassification of Plaintiff as an independent contractor, the failure to compensate Plaintiff for services rendered, and the retaliatory disabling of Plaintiff's access to corporate communications. Dr. Berkan further personally benefited from the services of Plaintiff. Accordingly, Plaintiff asserts claims against Dr. Berkan individually based on his direct involvement in, and personal responsibility for, the unlawful conduct at issue.

4. Plaintiff is currently, and at all times relevant to this action has been, a resident of and domiciled in the Commonwealth of Virginia. Plaintiff is EC's former misclassified employee or independent contractor.

## JURISDICTION AND VENUE

5. This action arises under the laws of the State of New York.

6. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as complete diversity exists. Plaintiff is a citizen of Virginia. Defendants are citizens of

New York. The amount in controversy, as discussed *infra* and requested in *the ad damnum* clause, exceeds $75,000.00, exclusive of costs and interest.

7. This Court has personal jurisdiction over Defendants pursuant to Fed. R. Civ. P. 4(k)(1)(A) and New York Civil Practice Law and Rules ("CPLR") § 302(a)(1), (3) and (4), as Defendants expressly transact business and supply goods and services in New York; for causing tortious injury to Plaintiff outside the State of New York when Defendants regularly transact business in New York and should have reasonably expected their acts to have consequences in New York; and using or possessing real property in the State of New York.

8. Venue is proper in the Southern District of New York, White Plains Division, pursuant to 28 U.S.C. §§ 1391(a)(2)-(d) because a substantial part of the events or omissions giving rise to the claims set forth in this Complaint occurred in this judicial district and in this division and Defendants regularly conduct business in the State, County, and City of New York.

## FACTUAL BACKGROUND

9. Plaintiff is a veteran of the technology industry and a 1981 graduate of American University with a Bachelor of Arts in International Relations. Prior to his engagement with Defendants, Plaintiff amassed approximately thirty-eight (38) years of experience in business development and related fields.

10. Beginning in or around May 2019, Plaintiff commenced providing professional services to EC. Despite working twenty (20) or more hours per week for EC over a period of approximately three (3) years, and incurring business-related expenses in connection with EC's operations—including expenses for remote work-related tools and services—Plaintiff received no compensation from EC apart from a one-time payment of $500.00 in connection with his work on the Foley-Caterpillar account.

11. On or about May 6, 2022, following three years of uncompensated labor and to induce Plaintiff to continue providing services despite the lack of meaningful compensation, EC offered Plaintiff an agreement titled "Equity Track Independent Representative Engagement Terms" (the "Agreement"), attached hereto as **Exhibit A** and incorporated herein by such reference.

12. The Agreement purported to characterize Plaintiff as an independent contractor rather than an employee. In exchange for continued services, Plaintiff was promised the potential for equity in EC, though no tangible equity, salary, or consistent remuneration was ever ultimately conferred.

13. Defendants' characterizations of Mr. McDonell as an "independent contractor" do not preclude application of FIFA. FIFA, which contains no geographic limitation on where the work must be performed, and applies where the hiring party's principal place of business is in New York City, as was the case here. Defendants failed to pay Plaintiff timely or properly under FIFA's mandates, including the requirement to tender payment within 30 days of service completion and to provide a written contract specifying material terms.

14. From the execution of the Agreement through his termination in July 2023, Plaintiff continued to perform substantial services for the benefit of EC. Throughout this period, Plaintiff worked approximately twenty (20) or more hours per week.

15. During the relevant period, including after the World Health Organization's declaration of the COVID-19 pandemic on March 11, 2020, and New York State's State of Emergency declaration on March 7, 2020, Plaintiff's work was largely performed remotely. Despite occasional discussions of in-person meetings in New York, pandemic-related travel restrictions and public health concerns often prevented such meetings from occurring.

16. In July 2023, Mr. McDonell's services were terminated by EC's then-CEO, Dr. Berkan, who also became one of the three founders of 1A1. Plaintiff's separation was memorialized in writing by Dr. Berkan. At the time of his termination, Plaintiff's EC email account (david.mcdonell@exclone.com) was summarily disabled without affording him an opportunity to retain copies of his email correspondence or his electronic calendar evidencing meetings and assignments.

17. Notwithstanding EC's disabling of his email account, Plaintiff was able to recover 732 individual WhatsApp communications between himself and Dr. Berkan, dating from December 26, 2019, through August 9, 2023, in addition to certain text message records and partial mobile telephone communications evidencing the nature and scope of his work for EC.

18. On or about September 4, 2023, Plaintiff, through separate counsel, issued a demand for $200,000.00 in unpaid wages for services rendered from May 2019 through July 2023. That demand, which was based on legal advice at the time, has since been expressly withdrawn. Nonetheless, the underlying factual allegations regarding the non-payment Plaintiff's services remain valid and actionable.

19. EC was incorporated in Delaware but maintained its principal office in Manhattan, New York. EC was not registered to do business as a foreign corporation in New York in violation of Business Corporation Law § 1301. Upon information and belief, following EC's dissolution, 1A1 was formed on December 6, 2023, in Delaware, and assumed EC's liabilities, operated from the same principal address, shared executives (including Dr. Berkan), and continued substantially the same business activities. Accordingly, 1A1 is liable as a successor to EC for Plaintiff's damages under New York law.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Violation of the Freelance Isn't Free Act –**
**Failure to Provide a Written Contract, Failure to Timely Pay, Retaliation)**

20. Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs of this Complaint as if fully set forth herein.

21. Defendants were required under New York City Administrative Code § 20-928 to provide Plaintiff with a written contract containing material terms of the engagement. Defendants failed to do so.

22. Defendants were required under Administrative Code § 20-929 to pay Plaintiff within thirty (30) days of completion of services. Defendants failed to timely compensate Plaintiff for his services provided from May 2019 through July 2023.

23. Defendants unlawfully retaliated against Plaintiff in violation of Administrative Code § 20-930 by disabling his email account, refusing to remit due compensation, and transferring operations to a successor entity to evade obligations under FIFA.

24. Defendants knowingly failed to comply with the mandates of the New York City's FIFA.

25. Plaintiff is entitled to statutory damages, double damages, attorney's fees, and other appropriate relief pursuant to Administrative Code § 20-933.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(Breach of Contract or, in the Alternative, Unjust Enrichment)**

26. Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs of this Complaint as if fully set forth herein.

27. Plaintiff and EC entered into an enforceable agreement under which Plaintiff agreed to provide business development and related services, and Defendants agreed to

7

compensate Plaintiff for those services — including but not limited to promises of equity, commissions, or other forms of remuneration.

28. The Agreement, even if deficient under FIFA standards, nonetheless constituted a contract that imposed obligations on Defendants to compensate Plaintiff in a reasonable and timely manner for the substantial benefit he provided.

29. Plaintiff fully performed his contractual obligations by rendering services to EC continuously from May 2019 through July 2023.

30. Defendants materially breached their contractual obligations by failing to compensate Plaintiff in accordance with the parties' understanding, and by failing to confer upon Plaintiff any equity, commissions, salary, or equivalent remuneration promised or implied under the circumstances.

31. In addition to breaching the express terms of the agreement, Defendants breached the implied covenant of good faith and fair dealing inherent in all New York contracts by: (a) acting in bad faith to deprive Plaintiff of the benefits of the bargain, (b) engaging in acts designed to prevent Plaintiff from realizing the fruits of the Agreement, including the opportunity to benefit from the promised equity, and (c) terminating Plaintiff and transferring operations to a successor entity (1A1) in an effort to evade contractual obligations.

32. As a direct and proximate result of Defendants' breach, Plaintiff has suffered damages in an amount to be proven at trial, but believed to exceed $200,000.00, representing unpaid compensation, lost equity, and related losses.

33. In the alternative, if it is determined that no enforceable written contract governed the full scope of Plaintiff's services, then Plaintiff is entitled to recover under a theory of unjust enrichment.

34. Plaintiff conferred substantial benefits on Defendants by providing business development services, securing business opportunities, and materially advancing Defendants' operations, for which Defendants knowingly accepted and retained the benefit without providing Plaintiff fair and reasonable compensation.

35. Under principles of equity and good conscience, Defendants should not be permitted to retain the benefits derived from Plaintiff's services without compensating him appropriately.

## AS AND FOR A THIRD CAUSE OF ACTION
**(Fraud in the Inducement)**

36. Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs of this Complaint as if fully set forth herein.

37. Under New York law, a plaintiff may assert a claim for fraud in the inducement where a defendant knowingly makes false representations of material fact, with the intent to induce the plaintiff to rely upon them, and where the plaintiff reasonably relies to his detriment.

38. At or around the time Plaintiff executed the Agreement and agreed to continue providing services without guaranteed compensation, Defendants, including Dr. Berkan acting on behalf of EC and 1A1, knowingly made false representations of material fact to Plaintiff.

39. Specifically, Defendants falsely represented that Plaintiff would receive meaningful equity compensation, commissions, and financial rewards tied to EC's success, inducing Plaintiff to forego other employment opportunities and to continue performing extensive services without salary or reimbursement.

40. At the time these representations were made, Defendants knew, or recklessly disregarded, that no realistic plan or bona fide intention existed to confer equity or fair compensation to Plaintiff.

41. These representations were material, were made with the intent to induce Plaintiff's reliance, and did, in fact, induce Plaintiff to expend substantial time, effort, and personal resources working for the benefit of Defendants without fair compensation.

42. Plaintiff's reliance upon Defendants' false representations was justifiable and reasonable under the circumstances, particularly given Defendants' position of trust, the apparent corporate structure and legitimacy of EC, and the express promises made.

43. Plaintiff only discovered that such representations were false when he was abruptly terminated in July 2023.

44. As a direct and proximate result of Defendants' fraudulent inducement, Plaintiff has suffered substantial monetary damages, including unpaid wages, lost opportunities, loss of equity interests, and related consequential damages, in an amount to be proven at trial.

45. Plaintiff further seeks punitive damages, as Defendants' conduct demonstrates willful, wanton, and malicious wrongdoing aimed at depriving Plaintiff of compensation while retaining the benefit of his labor.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Misclassification as Independent Contractor under New York Law — Pled in the Alternative)

46. Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs of this Complaint as if fully set forth herein.

47. To the extent Defendants argue that Plaintiff was classified solely as an "independent contractor," such classification was improper, inaccurate, and unlawful under New York law.

48. In reality, the actual relationship between Plaintiff and Defendants was that of employer and employee, based on the following non-exhaustive factors: (a) Defendants

exercised significant control over the manner and means by which Plaintiff performed his services; (b) Plaintiff's work was integral to the core business operations of Defendants; (c) Plaintiff worked substantively for Defendants during the engagement period; (d) Plaintiff was subject to oversight, supervision, and direct communication requirements imposed by Defendants' executives, including Dr. Berkan; and (e) Plaintiff performed his services over a prolonged period of time, under conditions that mirrored full employment rather than project-based, discrete freelance work.

49. Under well-established New York law, courts consider the "economic reality" of the relationship rather than the labels attached by the parties.

50. Defendants' misclassification of Plaintiff as an independent contractor unlawfully deprived him of rights and protections afforded to employees under applicable New York law, including proper wage payments, reimbursement of business expenses, statutory benefits, and protection from retaliation.

51. As a direct and proximate result of Defendants' misclassification, Plaintiff has suffered substantial economic and non-economic damages, including but not limited to unpaid wages, unpaid expenses, lost benefits, and related consequential harm.

52. Plaintiff is entitled to recover all available remedies for misclassification under New York law, including compensatory damages, statutory penalties, and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, the premises considered, Plaintiff respectfully demands judgment against Defendants, jointly and severally, and prays that this Honorable Court grant the following relief:

1. Compensatory damages in an amount to be determined at trial, but believed to exceed Two Hundred Thousand Dollars ($200,000.00), representing unpaid compensation,

commissions, lost equity, unpaid expenses, and related damages resulting from Defendants' breaches of contract, misclassification, and unlawful conduct;

2. Consequential damages resulting from Defendants' breaches and fraudulent inducement, including lost business opportunities, reputational harm, and other foreseeable losses;

3. Double damages under the New York City Freelance Isn't Free Act, N.Y.C. Admin. Code § 20-933, for each violation, including Defendants' failure to provide a written contract and to timely pay for services rendered;

4. Statutory damages for Defendants' violation of FIFA, including damages per each separate violation, and for Defendants' retaliatory conduct under Administrative Code § 20-930, and any additional statutory penalties or remedies authorized by law;

5. In the alternative, damages for misclassification, including unpaid wages, unreimbursed expenses, statutory penalties, and any other relief available under New York law for improper classification of an employee as an independent contractor;

6. Punitive damages on Plaintiff's fraud in the inducement claim, in an amount sufficient to deter similar fraudulent misconduct;

7. Pre-judgment and post-judgment Interest at the maximum legal rate permitted by law from the earliest date allowed;

8. Reasonable attorneys' fees and costs of this action pursuant to the New York City Freelance Isn't Free Act and other applicable statutes, as well as under the Court's equitable powers;

9. Equitable relief, including but not limited to an Order requiring the preservation and production of all documents, electronically stored information, and communications relevant to Plaintiff's claims; and

10. Such other and further relief as this Court may deem just, proper, and equitable.

## DEMAND FOR JURY TRIAL

In accordance with Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby requests a jury trial for all issues triable by jury, including, but not limited to, those issues and claims set forth in this Complaint.

Date: April 30, 2025,                    Respectfully submitted,

By: /s/__Robert Powers
Robert Powers, Esq.
MCCLANAHAN POWERS, PLLC
3160 Fairview Park Drive, Suite 410
Falls Church, VA 22042
Telephone: (703) 520-1326
Facsimile:  (703) 828-0205
Email: rpowers@mcplegal.com
           mtubens@mcplegal.com
*Counsel for Plaintiff*

## CERTIFICATE OF TRANSMISSION

I hereby certify that the forgoing COMPLAINT with referenced EXHIBIT is being electronically transmitted on the date noted below via the CM/ECF system of the U.S. District Court for the Southern District of New York. The requisite filing fee of $400.00 and any additional fees related to this matter are being charged to an American Express credit card concurrently with this filing.

Date: April 30, 2025.                    By: /s/__Robert Powers_____
                                         Robert Powers, Esq.
                                         *Counsel for Plaintiff*

13